UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER REID THOMAS,<br><br>        Plaintiff,<br><br>    v.<br><br>AMPERSAND, INC.,<br><br>        Defendant. | Case No. 25-cv-05835-RFL<br><br>**ORDER TRANSFERRING CASE**<br><br>Re: Dkt. No. 14 |

      Christopher Reid Thomas works in the EB-5 sector, an industry "encouraging foreign investment [into the United States] in exchange for the opportunity to obtain permanent residence."  (*See* Dkt. No. 1 (the "Complaint") ¶ 15.)  In August 2023, he began working for Ampersand, a financial services company, as its Chief Strategy Officer.  His employment agreement contained a noncompete clause.  In April 2025, Ampersand terminated Thomas's employment, ostensibly for cause, stemming from his purportedly poor performance.  The company subsequently sent him a cease and desist letter, invoking the employment agreement's noncompete clause, in connection with his ongoing work for a consulting company that he had founded about two months before termination.

      Thomas then commenced this action in which he seeks primarily two forms of relief:  (1) a declaration voiding the noncompete clause and an injunction barring its enforcement; and (2) damages for Ampersand's alleged breach of the employment agreement.  Ampersand now moves to dismiss the action for improper venue or, in the alternative, to transfer the action to the United States District Court for the Eastern District of Wisconsin.  (*See* Dkt. No. 14.)  For the reasons set forth below, the case is **TRANSFERRED**.  This Order assumes that the reader is

familiar with the facts of the case, the applicable legal standards, and the parties' arguments.[1]

**Dismissal for Improper Venue.**  "A civil action may be brought in [] a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located . . . ." 28 U.S.C. § 1391(b)(1).  And "[f]or all venue purposes," a corporate defendant "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *See id.* § 1391(c)(2). By failing to object to this Court's personal jurisdiction over it in the motion to dismiss or transfer, its first opportunity to do so, Ampersand, the only defendant in this action, has waived any such objection.  *See Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106-08 (9th Cir. 2000).  Accordingly, the Court exercises personal jurisdiction over Ampersand.  *See, e.g.*, *Ward v. Certain Underwriters at Lloyd's of London*, No. 18-cv-07551-JCS, 2019 WL 2076991, at *3 (N.D. Cal. May 10, 2019) (failure to object to personal jurisdiction resulted in exercise of personal jurisdiction).  That exercise of personal jurisdiction renders Ampersand a resident of this District, and venue in this District is therefore proper.  *See, e.g.*, *Valencia v. E*Trade Sec. LLC*, No. 21-cv-00161-SK, 2021 WL 2587965, at *2 (N.D. Cal. Mar. 4, 2021) (waiver of personal jurisdiction results in satisfaction of Section 1391 residency requirement such that venue is proper in forum).

Ampersand disputes that failing to object to personal jurisdiction can result in a *per se* determination that venue is proper, arguing that such a conclusion:  (1) "nullif[ies]" its venue objection by treating it as waived; and (2) renders portions of Section 1391 meaningless.  (*See* Dkt. No. 27 at 2-4.)  As for the first argument, Ampersand's venue objection has not been treated as waived.  Rather, its objection was considered, and it failed because Ampersand is subject to personal jurisdiction.  As for the second argument, Ampersand points specifically to Sections 1391(b)(1) and (d).  Under subsection (b)(1), venue lies in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."

---

[1] All citations to page numbers in filings on the docket refer to ECF page numbers.

The above analysis did not render this provision meaningless but rather gave it effect: under Section 1391(c)(2), Ampersand is deemed to reside in this District, and so subsection (b)(1) declares that venue is proper here. Moreover, the waiver analysis would not automatically result in venue being proper in the forum in every instance (*e.g.*, if there is more than one defendant or if the waiving defendant is a natural person). For the same reason, Ampersand's argument fails with respect to subsection (d).

*__Discretionary Transfer.__* "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). A discretionary transfer under "section 1404(a) requires two findings—that the district court is one where the action might have been brought and that the convenience of parties and witnesses in the interest of justice favor transfer." *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (quotation marks omitted).

Beginning with Step One, Ampersand's principal office is located in Waukesha, Wisconsin. (*See* Dkt. No. 14-1 ¶ 6.) Waukesha is located in Waukesha County, and Waukesha County is within the jurisdiction of the United States District Court for the Eastern District of Wisconsin. *See* 28 U.S.C § 130. Accordingly, Ampersand resides in the Eastern District of Wisconsin, and venue is proper there. *See* 28 U.S.C. § 1391(b)(1); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068-69 (9th Cir. 2015).

The analysis then turns to Step Two, which "requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation omitted). In this District, courts "commonly" consider the following factors:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*See Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011) (citations omitted).  "[N]o individual factor is dispositive . . . ." *Merrell v. Tapestry, Inc.*, No. 23-cv-06671-RFL, 2025 WL 2615062, at *2 (N.D. Cal. Sept. 10, 2025) (citation omitted).  Rather, "[t]he burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014) (citation omitted).  Ultimately, the decision whether to transfer under Section 1404(a) rests within a district court's discretion.  *See Jones*, 211 F.3d at 498.  Here, the factors weigh in favor of transferring this action.

As to the first factor, Thomas chose to file in this District.  Of course, Thomas no longer lives in California, and "[t]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence." *United States v. Acad. Mortg. Corp.*, No. 16-cv-02120-EMC, 2018 WL 4053484, at *5 (N.D. Cal. Aug. 24, 2018) (citation omitted).  Even so, it appears that a substantial amount of the relevant activity underlying Thomas's claims occurred in this District, which counsels in favor of deferring to Thomas's choice of forum.  *See, e.g.*, *Jimenez v. Haxton Masonry, Inc.*, No. 18-cv-07109-SVK, 2019 WL 9573762, at *2-3 (N.D. Cal. May 10, 2019); *see also Widevine Techs., Inc. v. Verimatrix, Inc.*, No. 08-cv-01039-JLR, 2008 WL 11506772, at *2 (W.D. Wash. Oct. 2, 2008) ("A court will give the plaintiff's choice of forum preference to the extent that it was motivated by legitimate reasons . . . ." (citation and quotation mark omitted)).  Accordingly, this factor weighs against transfer.

As to the second factor, "[w]hen considering the convenience of the parties, courts typically consider the location of the parties relative to the forum and the ease of the parties' participation in the litigation." *Desert Survivors v. U.S. Dep't of the Interior*, No. 16-cv-01165-JCS, 2016 WL 3844332, at *7 (N.D. Cal. July 15, 2016) (citation omitted).  Ampersand is a Wisconsin-based company with all of its current employees living in Wisconsin.  Thomas lives in Florida, which is closer to Wisconsin than California, though Thomas "travel[s] to California several times throughout the year."  (*See* Dkt. No. 26-1 ¶ 10.)  This factor weighs in favor of

4

transfer.

As to the third factor, "[t]he convenience of the witnesses is typically the most important factor in a motion to transfer." *Merrell*, 2025 WL 2615062, at *2 (citation omitted). Both sides identify third-party witnesses in their preferred jurisdictions who they believe will provide relevant evidence: Ampersand's CEO and employees on the one hand, who reside in Wisconsin, and contacts within JTC (one of Thomas's clients during his time at Ampersand) and the EB-5 industry broadly, who reside in California. At first blush, the presence of witnesses on either side of the ledger would seem to render this factor a wash. But in evaluating the factor, "the court must consider the importance of the witnesses." *See Morris v. Safeco Ins. Co.*, No. 07-cv-02890-PJH, 2008 WL 5273719, at *4 (N.D. Cal. Dec. 19, 2008) (citation omitted). Thomas's claims inform that analysis.

Thomas's first five claims concern the legality and enforceability of certain provisions in his employment contract, including the noncompete clause, and Ampersand's alleged failure to timely inform him of the presence of an unenforceable noncompete clause in his employment contract.[2] Those claims will likely turn primarily on legal determinations, not factual determinations, as the terms of the contract, Thomas's California residence, his remote work arrangement, and the content of Ampersand's cease and desist letter appear to be largely uncontested. To the extent that witness testimony will be relevant, Thomas does not specify why the JTC and EB-5 industry witnesses in California would have relevant information. For example, it is not obvious why their testimony would bear on the interpretation of contractual terms, contract negotiations, the damages allegedly suffered by Thomas due to Ampersand's assertion of the disputed contractual provisions, or even the location(s) from which Thomas worked remotely on most days. By contrast, Ampersand has shown that its employees in

---

[2] Ampersand has stated that it will now waive the noncompete provisions in Thomas's employment contract. (*See* Dkt. Nos. 14-1 ¶ 46, 26-1 ¶ 116; *see also* Dkt. No. 26-5 § 8.) Thomas, however, has not dismissed his noncompete claims, which include a request for damages based on Ampersand's prior assertion of those provisions in its cease and desist letter. (*See* Dkt. No. 26 at 25-26.) Accordingly, this Order considers those claims in its analysis.

5

Wisconsin — including Ampersand's CEO, who is alleged to have recruited Thomas and negotiated the contract — will likely have relevant testimony on those topics.

As for Thomas's sixth claim, he alleges that Ampersand breached his employment agreement by improperly terminating his employment "for cause." According to Thomas, he excelled in his performance at Ampersand, and so the termination was not actually for cause, meaning he was entitled to a better severance package than what he received. In its termination letter, Ampersand referenced Thomas's failure to comply with a performance improvement plan ("PIP") circulated the week prior. (*See* Dkt. No. 1-4.) The PIP is not in the record, but in the Complaint, Thomas alleges that the PIP identified six purported deficiencies in his performance: (1) Thomas breached confidentiality in an email; (2) Thomas engaged in a "communication failure" in authorizing Ampersand's sponsorship of an EB-5 industry event; (3) Thomas sent a client a proposal containing "grammatical and formatting errors"; (4) Thomas "failed to provide updates regarding his progress towards his 2025 Goals"; (5) Thomas was unable "to manage events and staff," and one employee in particular that Thomas managed "was not performing at the level that [Ampersand's CEO] expected"; and (6) Thomas engaged in "unprofessional" workplace conduct. (*See* Complaint ¶¶ 157-72.) Most of the performance deficiencies listed in the PIP concern internal workplace conduct about which Ampersand's employees in Wisconsin would likely be the principal witnesses. To the extent that these deficiencies concern interactions with those outside Ampersand, Thomas does not explain why any California residents at JTC or in the EB-5 industry broadly would have relevant testimony. *See, e.g.*, *Doe v. Spahn*, No. 21-cv-04007-LB, 2021 WL 6052088, at *6 (N.D. Cal. Dec. 21, 2021) (location of plaintiff's physician given little weight where plaintiff's "medical treatment is not central to the claim"). Thus, it appears that the most significant witnesses as to this claim will likely be in Wisconsin.

To be sure, the inconvenience to Ampersand's employee witnesses should be given "little weight because [Ampersand is] able to compel [its] employees to testify at trial, regardless of forum." *See Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-cv-03613-WHO, 2020 WL

1245130, at *5 (N.D. Cal. Mar. 16, 2020) (citation omitted).  Even so, it appears that Ampersand employees will have highly relevant testimony concerning Thomas's claims, and Thomas's identified witnesses will likely have little relevant testimony, so the inconvenience to the employee witnesses is accorded greater weight.  Accordingly, this factor weighs clearly in favor of transfer.

As to the fourth factor, as discussed above, most of Thomas's claims will likely turn on legal questions, not factual questions, and to the extent that factual issues are relevant, it appears that most of the relevant evidence is located in Wisconsin.  "However, [m]odern technology— which enables the transmission of many documents over large distances in little time—often renders documents' physical locations unimportant."  *Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 WL 2950164, at *2 (N.D. Cal. Oct. 17, 2025) (citation and quotation marks omitted).  Accordingly, this factor weighs slightly in favor of transfer.

As to the fifth factor, Thomas asserts that California law governs his claims, while Ampersand insists that Wisconsin law governs, in light of the employment agreement's choice of law clause.  If Wisconsin law applies, that would favor transferring the case, and if California law applies, that would weigh against transfer.[3]  At the same time, both this Court and courts in the Eastern District of Wisconsin are capable of applying different states' laws.  *See Ryan v. Microsoft Corp.*, No. 14-cv-04634-LHK, 2015 WL 1738352, at *9 (N.D. Cal. Apr. 10, 2015).  Accordingly, this factor is neutral.  *See, e.g.*, *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, No. 19-cv-00792-EMC, 2019 WL 5789273, at *9 (N.D. Cal. Nov. 6, 2019).

As to the sixth factor, the parties do not identify any cases that could be consolidated with this one.  Accordingly, this factor is neutral.

As to the seventh factor, Thomas entered into his employment contract while living in California, and he resided in California for a majority of his time at Ampersand.  "California has

---

[3] The parties do not brief the choice of law analysis.  This Order, therefore, does not perform one.

expressed a strong public policy interest in adjudicating employment and labor matters concerning California residents and labor that occurs in California[, but Wisconsin], too, has an interest in ensuring that citizen businesses follow the law." *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1030-31 (N.D. Cal. 2020). California's interest is somewhat lessened because Thomas moved out of state during the second half of 2024 (while he was still working for Ampersand), and he no longer lives in California. This factor weighs against transfer.

As to the eighth factor, "this factor does not weigh significantly into the analysis, as the case remains in the pleading stage, and trial is not scheduled . . . ." *See Brown v. Newsom*, No. 23-cv-04040-RFL, 2024 WL 2853978, at *3 (N.D. Cal. May 1, 2024). Moreover, each side cites statistics favoring its preferred forum. Accordingly, this factor is neutral.

In sum, the majority of the non-neutral factors weigh in favor of transferring this action. Moreover, the convenience of witnesses, which is the most important factor, weighs clearly in favor of transfer. Accordingly, a discretionary transfer is appropriate.

*Conclusion.* For the foregoing reasons, the request to dismiss the case is **DENIED**, and the request to transfer is **GRANTED**. The Clerk shall transfer the case to the Eastern District of Wisconsin.

**IT IS SO ORDERED.**

Dated: December 1, 2025

RITA F. LIN
United States District Judge